IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DAVID JAMES FOUGERE                                                                          PLAINTIFF

v.                                    Civil No. 06-5193

CAPTAIN HUNTER PETRAY;
DR. NEIL MULLINS; and
NURSE SUE McDONALD                                                                         DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds pro se and in forma pauperis.

Plaintiff is currently incarcerated in the Arkansas Department of Correction. The events at issue in this lawsuit occurred while the plaintiff was incarcerated at the Benton County Detention Center. Specifically, plaintiff contends he was denied adequate medical care.

Defendants filed a summary judgment motion (Doc. 18). To assist plaintiff in responding to the motion, a questionnaire was propounded (Doc. 21).

Plaintiff filed a timely response to the questionnaire (Doc. 22). The summary judgment motion is before the undersigned for issuance of this report and recommendation.

### Background

Fougere was booked into the Benton County Detention Center (BCDC) on May 31, 2006, on charges of possession of a controlled substance. *Plaintiff's Response* (Doc. 22)(*hereinafter Resp.*) at ¶ 1. He remained incarcerated there until he was released to the Arkansas Department of Correction (ADC) on January 1, 2007. *Id.* at ¶ 45.

When he was booked into the BCDC, Fougere did not bring any medications with him. *Resp.* at ¶ 46. He was to be seen by Nurse McDonald on June 2, 2006, but was in court. *Id.* at ¶ 2.

On June 8th, Fougere was seen by Dr. Mullins for a complaint that his tooth and ribs hurt. *Resp.* at ¶ 3. Upon examination, Dr. Mullins noted Fougere had some pain in his upper left rib area, lateral to his nipple. *Id.* at ¶ 4. Dr. Mullins did not see any bruising, contusions, or swelling. *Id.* He asked if Fougere had been in a fight and he replied something like that. *Id.*

Dr. Mullins also noted Fougere's upper right wisdom tooth was broken off with about one third of the wisdom tooth remaining. *Resp.* at ¶ 5. Dr. Mullins noted it had been that way a long time. *Id.* When he asked Fougere how long it had been since he had seen a dentist, he indicated he could not recall. *Id.*

Dr. Mullins diagnosed Fougere with chronic dental caries, right upper wisdom tooth, and a possible contusion to the left upper rib cage. *Resp.* at ¶ 6. He prescribed antibiotics, PEN VK, for ten days, Ibuprofen for four days, and concluded Fougere did not need any special medication for his ribcage. *Id.*

Nurse McDonald treated Fougere on June 16th and prescribed triamcinolone cream for rash to the front of his legs for six nights. *Resp.* at ¶ 7. Nurse McDonald examined Fougere on June 21st and gave him Ibuprofen for ten days for a toothache and noted his upper molar was rotten. *Id.* at ¶ 8.

Fougere was seen by Nurse McDonald on June 27th. *Defts' Ex.* 2 at page 17; *Resp.* at ¶ 9. She gave him antacid tablets for ten days for acid reflux. *Id.* According to Nurse

McDonald's notes, Fougere stated his doctor in Vermont had put him on stress meds. *Defts' Ex. 2* at page 17. She indicated she would fax a release for his records. *Id.*

Fougere, however, states he told her he needed some medication for stress and to see a mental health doctor. *Resp.* at ¶ 9. Fougere indicates Nurse McDonald responded that he would have to contact one himself or have his family do it. *Id.*

Fougere was seen by Nurse McDonald on July 5th and instructed to gargle with warm salt water, twice a day, and given Ibuprofen and Benadryl. *Resp.* at ¶ 10. He was to be seen by Nurse McDonald on July 10th but he was in court. *Id.*

Fougere was seen by Dr. Mullins on July 11th for a complaint that his tooth was chipped off and bothering him. *Resp.* at ¶ 12. Dr. Mullins noted that Fougere's right upper molar had broken in half. *Id.* He noted the rest of Fougere's teeth looked to be in quite good dental repair. *Id.* Dr. Mullins diagnosed chronic dental caries, prescribed an antibiotic, Keflex, for ten days, Ibuprofen for four days, and put Fougere on the list to see the dentist. *Id.* at ¶ 13.

Fougere was seen by Dr. Mullins on July 19th. *Resp.* at ¶ 14. Fougere complained of being stressed out and also asked if he could have more Ibuprofen for his tooth until he saw the dentist. *Id.*

Dr. Mullins noted Fougere had an appointment with the dentist. *Defts' Ex. 2* at page 18. Dr. Mullins also noted Fougere was writing multiple requests and talking about seeking pills for a solution to his problem. *Id.* Dr. Mullins diagnosed Fougere with chronic dental caries and some stress. *Id.* Dr. Mullins prescribed Thorazine, twice a day, and Ibuprofen for ten days. *Id.*

Fougere indicates he took the Thorazine for a little while but it was having bad side effects on him. *Resp.* at ¶ 15. As a result he stopped taking it and told Dr. Mullins. *Id.* Fougere then contends Dr. Mullins didn't give him any medication for awhile. *Id.*

Fougere was seen by Dr. Mullins on August 1st. *Resp.* at ¶ 16. He was complaining of stress. *Id.*

Fougere had just had his tooth pulled and Dr. Mullins noted it was healing well. *Defts' Ex.* 2 at page 19. Fougere indicated the Thorazine was not helping. *Id.* Dr. Mullins' notes indicate he advised Fougere that we lived in a pill orientated society and he was not going to give Fougere pills to try to solve all his problems. *Id.* According to Dr. Mullins' notes, Fougere replied he didn't want pills to solve all his problems. *Id.*

Dr. Mullins declined to prescribe anything for stress. *Defts' Ex.* 2 at page 19. When Fougere indicated he was having heartburn, Dr. Mullins diagnosed questionable GERD and prescribed antacid tablets for seven days and discontinued the Thorazine. *Id.*

According to Fougere, he told Dr. Mullins he needed something for anxiety attacks and stress not to solve his problems. *Resp.* at ¶ 17. Fougere states he also said he needed to see a mental health doctor and get some counseling. *Id.* Fougere asserts Dr. Mullins responded they did not offer that. *Id.* When Fougere indicated he didn't want the Thorazine, he maintains Dr. Mullins said he wouldn't get anything and not only discontinued that but also discontinued the Ibuprofen he had been getting because of his tooth being pulled. *Id.* at ¶ 18.

On August 28th, Fougere submitted a medical request stating that he had been having anxiety attacks since he had been at the BCDC. *Resp.* at ¶ 19. He stated that at one point he had

been put on Thorazine but it didn't work and he didn't like the way it made him feel. *Id.* He stated he was still having anxiety attacks and it couldn't be good for him. *Id.* In response, he was put on the list to see the doctor. *Id.*

Fougere states he saw the nurse instead of the doctor following this request. *Resp.* at ¶ 20. He indicates Nurse McDonald told him that Dr. Mullins would not give him any medication and she was taking him off the doctor's list. *Id.*

On August 29th, Fougere submitted another medical request. *Resp.* at ¶ 21(A). He stated he was suffering from stress and anxiety. *Id.* He indicated the Thorazine did not work and they got mad and now they were ignoring his medical problem. *Id.* He stated one medicine did not work for everyone. *Id.* In response, Nurse McDonald wrote that no one got mad. *Id.*

Fougere indicates he still did not get to see the doctor or a mental health doctor. *Resp.* at ¶ 20(A). In fact, he states Nurse McDonald stated she would not put him on the list to see Dr. Mullins and she could not get him any counseling. *Id.* at ¶ 20(B).

On August 31st Fougere submitted a grievance about his medical requests about anxiety being ignored. *Resp.* at ¶ 22. He stated the doctor got mad when he stated the Thorazine was not helping him and gave him the shakes. *Id.* He indicated the doctor took him off the Thorazine and was ignoring the problems he had with anxiety attacks. *Id.* He stated the attacks could not be good for his heart. *Id.* In response, Captain Petray stated he would forward Fougere's grievance to medical. *Id.* Petray stated the doctor made all medical decisions in the jail. *Id.*

AO72A
(Rev. 8/82)

On September 14th Fougere submitted another grievance about his anxiety attacks. *Resp.* at ¶ 23. He stated that he needed medication for anxiety. *Id.* In response, Petray said he would forward the grievance to medical. *Id.* He indicated the doctor made all medical decisions in the jail. *Id.*

On September 18th, Fougere submitted a medical request for treatment for headaches and anxiety attacks. *Resp.* at ¶ 24. A note was made on Fougere's request, that he was to see the nurse. *Id.* In response to this request, Fougere believes he was put on Ibuprofen and told he would see the doctor. *Id.* at ¶ 25.

On September 25th Fougere put in a medical request regarding stress. *Resp.* at ¶ 26. He stated he had put in several requests about stress and anxiety attacks. *Id.* He indicated that at one point he had been put on Thorazine but he didn't like the way it felt so he was taken off that and since then his problem had been ignored. *Id.* He stated one medication did not work for everyone. *Id.* In response, he was put on the list to see the doctor. *Id.*

Fougere was seen by Dr. Mullins on September 27th. *Resp.* at ¶ 27. He noted Fougere complained that he was not eating or sleeping well. *Id.* He stated he had a lot of stress in his life and would like something for it. *Id.* He indicated the Thorazine did not help any. *Id.* Dr. Mullins determined Fougere had some acute anxiety and stress. *Id.* Dr. Mullins prescribed Amitriptyline and decided to observe Fougere's behavior. *Id.*

On September 28th Fougere submitted a medical request complaining he had really dry skin. *Resp.* at ¶ 28. The Nurse responded that Fougere had been seen by Dr. Mullins the day before and didn't mention it at all. *Id.*

-6-

Defendants' records indicate Fougere was seen by Dr. Mullins again on October 3rd for anxiety and prescribed Elavil. *Defts' Ex.* 2 at page 22. However, Fougere contends he was not on Elavil. *Resp.* at ¶ 29. Fougere states he was on Amitriptyline. *Id.*

On October 9th Fougere submitted a medical request complaining that the medication he was on ran out. *Resp.* at ¶ 30. He also stated he needed something for the skin on his legs. *Id.* In response, he was to see the nurse. *Id.*

Fougere saw Nurse McDonald in response to this request. *Resp.* at ¶ 31. She gave him some cream for his legs and put him on the list to see the doctor. *Id.*

On October 16th, Fougere submitted a medical request. *Resp.* at ¶ 32. He complained that he had been getting Amitriptyline for a while and it was not working as well. *Id.* He stated he could not sleep. *Id.* He stated he was having more stress. *Id.* Fougere indicated he needed a higher dose and counseling. *Id.*

In response, Nurse McDonald wrote that the doctor prescribed what he deemed necessary and it was true the more drugs a person takes the more you become used to them. *Resp.* at ¶ 33. She stated Dr. Mullins did not give drugs to help inmates sleep so Fougere would have to get along with what the doctor prescribed. *Id.*

On October 17th, Fougere submitted a medical request asking to see the doctor about his medication and a rash. *Resp.* at ¶ 34. He was put on the list to see the doctor on Friday. *Id.* He was examined by Dr. Mullins on October 27th and diagnosed with a pustule on his leg and given Keflex, an antibiotic, and Mylanta. *Id.* at ¶ 35.

On November 4th, Fougere submitted a request asking to see the doctor as soon as possible. *Resp.* at ¶ 36. In response, he was put on the list to see the doctor on the 8th. *Id.* Fougere indicates he was seen by a different doctor on this occasion and put on Amitriptyline 25 mg. twice a day. *Id.*

On November 8th, Fougere submitted a medical request. *Resp.* at ¶ 38. He stated the doctor had told him that he would get his medication in the morning and evening but the medication sheet stated morning and dinnertime. *Id.* He asked that the medication sheet be changed or that he be put on the doctor's list so he could talk to him about it. *Id.* In response, Fougere indicates the medication times were changed. *Id.*

Fougere was seen by the doctor on November 13th for a pustule on his nose. *Resp.* at ¶ 40. Fougere was given Keflex for five days. *Id.*

On November 29th, Fougere submitted a medical request. *Resp.* at ¶ 42(A). He stated this was the third request he had submitted since last Wednesday to see the doctor and he still hadn't seen the doctor or nurse. *Id.* Fougere states he was attempting to see the doctor or nurse about increasing his Amitriptyline to 50 mg. and about a boil. *Id.* at ¶ 42(B). In response, he was put on the list to see the doctor on December 1st. *Id.* at ¶ 42(C). Fougere was seen by the doctor on December 1st and diagnosed with a rash and prescribed minocycline and Elavil. *Resp.* at ¶ 43.

Personnel at the BCDC followed all orders given by Nurse McDonald and/or Dr. Mullins regarding medication to be given Fougere or medical care he should receive. *Resp.* at ¶ 52. Fougere received all medication prescribed to him by Dr. Mullins. *Id.* at ¶ 44. However, he

contends he needed a "mental evaluation and counseling not just to be ignored at first then put on what ever a medical doctor wa[n]ted to put me on also a different doctor upped my meds both in frequency and strength." *Id.*

Prior to his incarceration at the BCDC, Fougere was not taking any medications for stress or anxiety on a daily basis. *Resp.* at ¶ 47. Fougere indicates he had been self-medicating with methamphetamine and other illegal drugs. *Id.* He indicates he had lost everything he owned, his wife, and his kids. *Id.* Because of this, Fougere asserts he needed medication and counseling and he believes this should have been provided while he was in jail or prison. *Id.*

When asked how Dr. Mullins exhibited deliberate indifference to his serious medical needs, Fougere responded that mental health is a problem that Benton County needs to address with professional help. *Resp.* at ¶ 48. Fougere asserts that mental health issues can lead to both mental and medical issues and they refuse to provide counseling and make it real hard to get mental health medication. *Id.*

When asked how Nurse McDonald exhibited deliberate indifference to his serious medical needs, Fougere responded that she refused several times to put him on the doctor's list. *Resp.* at ¶ 49. Additionally, Fougere asserts Nurse McDonald exhibited deliberate indifference by just returning several of his requests saying he was not going to get any medication for stress and they would not provide counseling. *Id.*

When asked how Petray exhibited deliberate indifference to his serious medical needs, Fougere responded that Petray merely responded to his grievance by stating that the medical decisions were made by the doctor. *Resp.* at ¶ 50.

## Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## Discussion

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as applied to the States by the Fourteenth

-10-

Amendment." *Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir. 2007). In this circuit it is now settled law that deliberate indifference is the appropriate standard of culpability for all claims that detention center officials have denied inmates, whether in pretrial or convicted status, adequate medical care. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

Defendants assert Fougere was seen on multiple occasions regarding his claims of anxiety and stress. They point out he was first prescribed Thorazine, then Amitriptyline, and later Elavil. While Fougere may not agree with the medications prescribed or the dosages, they maintain this is simply a disagreement with a treatment decision that does not amount to deliberate

indifference on their part. Furthermore, defendants contend there is no evidence any delay in treatment adversely affected Fougere's prognosis or that he suffered any physical injury as a result of allegedly being denied medication.

"[H]aving incarcerated Fougere, and thereby having prevented him from obtaining treatment on his own, the [county] may be found to have inflicted cruel and unusual punishment by failing to provide needed medical treatment." *Bailey v. Gardebring*, 940 F.2d 1150, 1155 (8th Cir. 1991). "This principle extends to an inmate's mental-health-care needs." *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990). *See also Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995)("Prison staff violate the Eighth Amendment if they are deliberately indifferent to an inmate's serious mental-health-care needs."). "[A] doctor's decision to take an easier and less efficacious court of treatment . . . or a refusal to provide essential care violates the eighth amendment." *Id.* (citations omitted).

"While it is true that courts hesitate to find an eighth amendment violation when a prison inmate has received medical care, that hesitation does not mean that the course of a physician's treatment of a prison inmate's medical or psychiatric problems can never manifest the physician's deliberate indifference to the inmate's medical needs." *Smith*, 919 F.2d at 93 (internal quotation marks and citations omitted).

In this case, we believe there are genuine issues of fact that preclude summary judgment in Nurse McDonald's and Dr. Mullins' favor. Although Fougere was prescribed Thorazine on July 19th, he stopped taking it by August 1st because it was not relieving his symptoms and was having bad side effects. *Resp.* at ¶ 15 & ¶ 17. Following this, Fougere was told he would get

any medication for stress or anxiety, would not be referred to a mental health professional, and would not get to see Dr. Mullins. *See e.g., Resp.* at ¶ 18, ¶ 20, ¶ 21(A), ¶ 21(B).

Although Fougere continued to submit medical requests and grievances, it was not until September 27th, that he was prescribed something for stress and anxiety. *Resp.* at ¶ 27. At that time, Dr. Mullins noted Fougere was experiencing some acute anxiety and stress. *Defts' Ex.* 2 at page 20. Thus, Fougere was denied any treatment between late July and September 27th. We believe there are issues of fact as to whether this constitutes deliberate indifference on the part of Nurse McDonald and Dr. Mullins.

With respect to Captain Petray, there is no indication he was personally involved in making any decisions regarding Fougere's medical treatment. "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007)(internal quotation marks and citation omitted). *See also Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment).

## Conclusion

For the reasons stated, I recommend that the defendants' motion for summary judgment (Doc. 18) be granted in part and denied in part. Specifically, I recommend the motion be granted

with respect to the claims against Captain Hunter Petray. I recommend the motion be denied with respect to the claims against Nurse Sue McDonald and Dr. Neil Mullins.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of August 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)